in this matter. I'd like to reserve five minutes for rebuttal. You may do so. At the outset, I'd like to address what we believe to be a dispositive issue in this case, whether the district court properly dismissed the remand  The government apparently concedes, I believe, that the lower court should have made findings of the about the entire length of non-excludable delay, including the period that was not reached by the court in Lewis I, which is the period between May 6th and September 20th, 1999, the 137 days. The findings of non-excludable delay, at least on that period and the entire period, were important for two reasons. One is the length of the non-excludable delay was a measure of the seriousness of the original speedy trial violation. The second is that the length and the period of the delay is related to any fault or the assessment of fault by the government for that delay. For instance, in the period that the Lewis I court found non-excludable, the 117 days between January 13th and May 9th, 2000, the court, the district court, believed that there was a good-faith misunderstanding of the law by the government, which caused that delay. We submit that it's clear from the record that the court, the district court, failed to make the findings about the total length of non-excludable delay. In the Court's own words, it was not going to go beyond the record of Lewis I. It was going to limit itself to the holding of Lewis I that the only period of non-excludable delay was the 117 days between January 13th and May 9th, 2000. It made no findings whatsoever about the other period challenged in Lewis I but not reached by the Lewis I court, the 137 days between May 6th and September 20th, 1999. Your point, I gather, is that if the judge on the record had adverted to the additional delay period, that his decision would have been different? If the judge had analyzed that 137 days, I'm not sure whether or not the court would have reached a different assessment of it, but at least Mr. Lewis would have had the opportunity to challenge the court's findings. Because the court made no findings about the 137 days of delay, there's nothing for this Court to review and there's nothing for Mr. Lewis to challenge. But wasn't the court in the sort of intellectual posture of adverting to the fact, well, there's no question, but there is a violation of the Speed Trial Act. Now the question is, should the indictment be dismissed with or without prejudice? Isn't that really what's on the table? It is. And didn't the court analyze the three factors that we have traditionally expected the court to analyze in these kinds of cases? It did not. It did not? It did not. All right. Tell us why not. It did not find the total length of non-excludable delay. It only – what it did was, as a matter of law, it limited itself to Lewis I. It said, in essence, the record in this case is what happened in Lewis I. And in Lewis I, this Court found the 117 days of delay between January 13th and May 9th, 2000 to be non-excludable. That's all the Lewis quote. And that's all it had to, because it's over 70. Isn't that right? Exactly. Okay. But it didn't ever reach. And because of that, it was unnecessary to reach the other challenge, which was the 137 days between – and the district court erred by failing to even consider that other delay. As the Court in Clymer made clear, when you're assessing this, you have to assess it. But the Court was aware, was it not, of the fact that this delay was 2 years and 4 months and 19 days? And certainly the court understood that. It did. And didn't it take that into consideration when it made the analysis of the factors? It did and it did not. What it took into consideration was that that was a period of delay. But what the Court said was, I'm only looking at non-excludable delay here. Because the excludable delay, you can't fault anyone for that because it's permitted under the statute. And so why would that be a basis on which to dismiss with or without prejudice, which I don't necessarily quibble with. Let me ask this question. Regardless, apparently there was one period of delay there. There was a finding about, that's the 117? Yes. But there was the 137 that there's no findings as to that? Yes. Irrespective of the periods of delay or the amount of delay, did the district court make findings with regard to whether the delay prejudiced your client? Yes. And what did the court say about that? The court said the prejudice was, there was substantial prejudice as a result of the delay. But not so substantial that he couldn't be retried? Because the court felt that the 117 days was the record, as it put it, and it wasn't going beyond the record. So the mistake that the government made was the 117 days. And that brings me to my next question. If the district court had, in your view, properly analyzed the 137-day period, what would have caused it to reach a different conclusion with regard to prejudice? Okay. What would have happened, I believe, if the court had analyzed the 137 days and Mr. Lewis would have argued, A, that it was not excludable for the reasons stated in the brief in Lewis I, if the court had found, had agreed that it was not excludable, then what would have, the next question would have been, well, what was the government's role in that violation? What was its fault? Which is clearly enumerated as one of the factors that you look into in deciding whether to dismiss with or without prejudice. And in doing that, that period of delay resulted from the fact that the government repeatedly told the court that Mr. Wong, who was this, who was the main defendant in this case, this fellow from Malaysia who was trafficking in wildlife, was the main defendant, was in Mexico and was fighting his extradition. The government repeatedly made charitably inaccurate, grossly inaccurate predictions about when Mr. Wong was going to appear. So in the interest of judicial economy and do you need an evidentiary hearing on that point, or is that something that this Court on appeal can assess? I asked for, what I asked for was discovery. I said, if you find that this period of delay was non-excludable, then give me some discovery about what the government was doing. Because I didn't know at that point whether or not it rose to the level of an evidentiary hearing. But the Court foreclosed it at two levels. First, it said, I'm not going to look to see whether the 137 days was excludable or not. Then, because you can't establish for me that you have a reason to get this discovery because I'm not going to look into the 137 days, I'm not going to give you the discovery. So I'm not sure on what basis Mr. Lewis would have been able to ask for an evidentiary hearing. I mean, I think the Court just misinterpreted the loss, simply. The Court felt that 117 days was the posture that the case came back in, and so it was going to look at the 117 days. Now, not to fault the Court, I think the government made it very clear that in its position was that the only relevant period, the only period that the Court needed to look at was the 117 days. So the only relevant period was the 117 days. Roberts. Let me ask this question. Whether the period is 117 days or 254, if I have my math correct. I think you do. Okay. Can you point to specific prejudice, putting the role of the government aside? Point to specific prejudice that resulted, to your client, in his ability to put on a defense that resulted from the period, whatever its length. The Court in Lewis I said that as a result of the delay in the trial, the original trial counsel was forced to withdraw from the case. He had to, he had to, he had previously been obligated to go to the Hague and ask to prosecute war crimes, which he had told the Court about numerous times. The Court continued to delay the case, and as a result of that, he had to leave and new counsel had to be appointed. Lewis I found that the right to counsel, the infringement of that right, was a substantial prejudice to Mr. Lewis. The Court ---- But that doesn't relate at all to 254 days. Would it be the same if it was 117? Would it not? The prejudice? I think that's right, yes. Right. But I think you need to answer Judge Hawkins' question. I thought I was. The hundreds, that is, you mean a specific prejudice from the 200 days? Yes. That's what I'm trying to get at. You say he looked at the 117 and came to the conclusion, dismissed, without prejudice, case can be retried. Right. If he had looked at the 137 and made specific findings as to it, he may well have come to a different conclusion. Right. And I'm searching for the why. The prejudice prong would have come out the same, except that under Wingo, the Wingo Supreme Court case, there's always prejudice associated with pretrial delay. And in this case, if it was 117 days versus 117 plus 137, it would have been a longer delay. So the prejudice from not having a speedy trial would have been longer. Because there's a number of cases that say that the measure of prejudice or the measure of the seriousness of the delay is the length, is the measure, the length of the delay is a measure of the seriousness of the delay. Counsel, I think we understand. I think we understand your argument. You may want to take your rebuttal time now, and we'll hear from the government, and then you still have your eight minutes to use, if you wish. I had several other issues. Oh, certainly. Fine. I don't want to lose my rebuttal time. On the other hand, if there were questions about the other issues, I was hoping to address them. But if there are not, then maybe I'll just... I don't think there are questions on the other issues. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court. My name is Todd Agard, representing the United States. Since Mr. Pike has spent all of his time on the Speedy Trial Act issue, I'll go right to that. I am, of course, available to ask, to answer any questions on any of the other issues that have been briefed. I think that really this goes to a characterization of the record. And in that regard, I want to make two points. The first is, is that the findings that Mr. Pike says were lacking were not only made on the record in this case. They were made over and over again. If you look at pages in the appellant's excerpt of record, and I'll read you some specific entries, page 380, this record doesn't reflect that there were improper exclusions of time, save and except for what the circuit found in this case. Page 398, it's very clear on this record the exclusions outside of the 117 days are justified. There's nothing in the record that reflects they are not. Page 399, from the outset, the exclusions of time that were made are justified. Nothing in this record reflects otherwise. Page 401, facts in the record support the exclusions that were made, save and except the ones that the Ninth Circuit didn't feel were justifiable. Page 409, there's nothing on this record that indicates that the representations that were made, and the Ninth Circuit doesn't reach this, that were made with respect to the extradition is erroneous. You have the findings that Mr. Pike is asking for. Now, he could have challenged the substance of these findings in his appeal, as he did in Lewis 1, but he didn't. There is nothing in his briefing that challenges any of these other periods of exclusions. He's just asking for findings. The findings were made. Now, if his quibble is that the district court didn't walk through specific continuances and specific exclusions, that's readily understandable. The district court had already done that the first time around before the first trial walked through at great detail, and that's what was in the excerpts of record in the Lewis 1 trial, were all the findings that the district court had made. This court set aside one of those findings. It came back to the district court, and Mr. Pike, on behalf of Mr. Lewis, says we need findings. You can understand why the district court didn't walk through them individually, but just said globally, there are findings, the findings are justified. The Ninth Circuit, this Court, only set aside one of them. So it's readily understandable why the Court referred to them in somewhat more generalized terms than you might otherwise expect. The other point that I wanted to make is that the Louis 1 panel found determined that the 117-day period, the speedy trial act violation that it determined existed, had a substantial impact on, in terms of prejudice, on the defendant, did not it? No. Actually, I mean, if I can be very specific here, what the Court found was that the overall pretrial period, the 2 years and 4 months, impacted, prejudiced him by causing his counsel to have to withdraw from the case. Mr. Lewis has readily conceded, both in the district court and in his briefing here, that the 117 days was not the cause of his counsel having to withdraw. And, in fact, this goes to the other point that I wanted to make. Your question about the additional 137 days, that also did not cause his counsel to withdraw. His counsel withdrew after several months after that entire, I think what you said, sort of a 254-day period had expired. So even if you counted the entire 137 and 117 days as non-excludable delay, the prejudice that he has pointed to of the loss of his counsel didn't result from that period. Okay. I understand. Sure. But I'm also ‑‑I was on Louis 1. Yes, I remember. And we said, quote, delay had substantial prejudicial effect on the defendant, who as a result was deprived of his right to be represented by counsel of his choice. Right. And what I'm saying is the Court was not distinguishing between the excludable delay and the non-excludable delay, and he, Mr. Lewis, has readily conceded that that prejudice, so-called prejudice, came from the excludable delay, not from the non‑excludable delay. What I'm trying to get to is, notwithstanding the series of questions I asked appellant's counsel, is do you think it was the defendant's burden before the district court to show that there was something more than Louis 1 found in terms of deciding whether to dismiss with or without prejudice? If I can answer that this way, and I hope that this is answering your question, the district court actually found that prejudice, the loss of his counsel, and weighed that among the factors and still found dismissal without prejudice was important. Mr. Lewis is not saying that that balancing was an abuse of discretion. So he had to go beyond that insofar as his argument is not that the district court misunderstood how the factors apply altogether. So, yes, he had to because he's ‑‑ and I think, frankly, he has to make that additional argument because the Supreme Court's decision in Taylor makes clear that it is very, very difficult. There is very broad discretion as long as the district court looks at the factors and doesn't make a clearly erroneous factual finding that it's very difficult to set aside the district court's balance. So, yes, I think he does have to make that additional showing, and I don't think that he's done so. So as I was saying, the district court, even though it didn't have to, it could have just looked from the prejudice, from the nonexcludable delay, from the violation of the Act. The prejudice that it ascribed in this case actually went beyond that, and by looking at the withdrawal of his counsel, which wasn't attributable to the violation of the Act, essentially gave him the prejudice finding that he wants by trying to expand the scope of the court's analysis. And then the only other point I think that I need to make is that the court actually did say in the last finding that I read to the court on page 409, the district court did actually make a specific finding that the continuance on the basis of the extradition for Mr. Wong was justified. And that page 409 is where the court said there's nothing on this record that indicates that the representations were made that were made with respect to extradition is erroneous. And that was the basis for the court denying the request for discovery on this issue. I understand what the court said, and I wasn't on the Lewis I panel, but the way I read the Lewis I decision was that the appellate court did not make a finding on the 137 days because it didn't have to make a finding. That's correct. And I don't think the district court was trying to say that this court affirmed its decision on the 137 days. The court was just saying the record justifies it. I already made that very specific finding the first time around. I see no basis to change my mind. Well, that's the whole point. That's not how I read what the district court said. I read what the district court said was that so I'm not going to consider whether any other portions should or should not have been excludable. That is certainly Mr. Lewis's position. That's how I read it. It's not I'm not adopting his position. I'm reading it. Well, I think if you look at if you look at all of I think if you read just one of those five different findings. No, no, counsel. Okay. I'm reading his holding when he gets to the holding. And I know it's very easy to pick out little statements throughout the whole thing. But when he holds it, he says he's looking at the 117 days. And then if you really look at it, it's only 75 because you take out 45. I guess my question is, I don't see where any court has actually ruled on those 137 days. And it's an issue we didn't rule on it the first time it was here. And the district court chose not to revisit it on a narrow reading of what we did in Lewis 1. And frankly, I have questions about the legitimacy of those 137 days as being excludable. For example, why what was the what was why did the government have such a necessarily strong interest in extraditing Wong and trying them together to the detriment of Mr. Lewis's right to have a speedy trial? Well, if you if you look back at the continuance that the court granted, well, this was thoroughly briefed in Lewis 1. And you can look back at if you if the court looks at the briefing in that case, that was just one of several factors that the court actually relied on in granting the continuance. There was also an ongoing investigation into co-conspirators in Arizona that was going on to Lewis's co-conspirators. There was also a transfer of the charges from Texas. There was a number of different reasons that the court relied on for granting the continuance. But in any event, even if you are right, which I, with all due respect, disagree with what the court did on remand, it is absolutely clear that the district court made an original finding pretrial before Lewis's first trial as to that 137-day period. And so even if the court, even if you are right that the court said, I'm not going to look at that again, what Lewis should have done in this appeal is brief what he briefed in Lewis 1, which was the district court's findings as to those 137 days were clearly erroneous or an abuse of discretion. There was a finding that was made. It was in the record that was readily available to him to challenge. And he simply hasn't done so. All he said is, I need findings. He has. Well, he asked for discovery and he wasn't allowed it because, I mean, to the extent, for example, the government was making this representations to the court, that would undermine the validity of the 137 days. Right. And the district court, in response to that request, said that the record supports the representations that were made as to extradition. And there was no basis. Moreover, I think it's important to point out. And denied discovery. What's that? And denied discovery. That's right. Of course, the record supports it because there was no ability to go behind what had already been done. No, I would quibble with that. Counsel, come on. I've been a district court judge. I know how this works. Well, I think what the district court said is it saw no basis to second guess the representations that were made. But in addition, I think you do have to look at the record where Lewis requested this discovery. He didn't cite any rule, any case, any anything. It was just a one sentence that said, I need discovery. And it didn't say what it hoped to find through this discovery or what evidence it would take through this discovery. It was really a very slim read that he was offering the district court. Actually, what this sort of kind of gives me, the conclusion, is that we should maybe reach every issue in future cases and not reach issues that we don't need to reach, because somehow this, there hasn't really been an appellate determination of this 137 days. Well, he could have, but he could have obtained that appellate determination simply by briefing it in this appeal. He briefed it, he could have cut and pasted from his first brief into this brief to challenge that determination. There's nothing different. The record is the same. He could have made exactly the same arguments just by cutting and pasting that argument in. Counsel, there is one other issue that I do have a concern about. And obviously, Mr. Paik will have a chance to respond. These factual stipulations that were used in the first trial, I would have assumed that anything that went on in the first trial expired at the end of the trial. I mean, why are the stipulations kind of given new life, so to speak, in a second trial? Because of the way they were written. They were written as open-ended stipulations. There was no limitation of in this trial or anything like that. And that's, frankly, the way that the case law has looked at the issue. If you looked at the ---- Well, not exactly. We don't have any case law that talks about two trials. We have case law about the same proceeding, not new trials. No, we do. There are not in this circuit specifically, but in other circuits. Right. You're talking about Wingate? Excuse me? You're talking about Wingate? And the Third Circuit case in Waldorf and the Tenth Circuit case in ---- Well, when I'm talking about we, I'm referring to we in the Ninth Circuit. Okay. Yes, that is true. There are no Ninth Circuit cases one way or the other on this case. Although I think, frankly, if you look at the Camp case, that was a retrial. And the Court, what the Court said was that he should be relieved of his stipulation because of a mistake of fact. So I think you can imply from that, that is fully consistent with these other cases that don't look to a cut-and-dry rule as to new trial, new stipulations, but look as to the substance of the stipulation and the basis on which the defendant is trying to withdraw. If I could just make two quick points about the stipulation. One is that this is an entirely different theory than what he proposed in the district court about the basis for the enforcement of the stipulation. In the district court, he said he wanted to withdraw from his stipulations because of a mistake of law. Now he's saying, no, no, no, I'm not trying to withdraw. Those stipulations expired on their own accord. The second point that I want to make is, and this might give the Court some comfort to the extent that it's troubled by this issue of enforcement of stipulations, is that Lewis has not showed any prejudice whatsoever from the enforcement of these stipulations. He doesn't say that any of the stipulations were factually inaccurate. Moreover, these were very easy-to-prove facts. And if you look at Agent Morrison's testimony in the transcript, in and around the pages where the stipulations are entered, he essentially testifies and has exhibits that support all of this information. So really, it was almost redundant information. Most of it just went to sort of establishing the structure of these FedEx transactions. So the prejudice in losing his original trial counsel was not sufficient to require dismissal with prejudice. But so he gets the defendant gets the detriment of that, but he can't have the benefit from successor counsel saying, wait a minute, I didn't participate in these stipulations. I have an entirely different view of the case. I don't want my client bound by these stipulations. It's the same trial counsel that executed both sets of stipulations. It is? Yes. Mr. Pike was the trial counsel of both the first trial and the second trial, and he executed the stipulations. And, you know, it's just up to the counsel who executes the stipulations to specify if they are in any way limited in scope. And, frankly, let's be clear. The reason probably why he didn't limit them is that these are incredibly easy to prove facts and that they were proven through other evidence. No, the reason why he probably didn't limit them is he didn't expect necessarily to have two trials. Well, actually, and I'm glad you brought that up, because all of the Speedy Trial Act issues, of course, had already been fully vetted prior to the first trial. Right. You don't get to try every trial, so that's the trial. You don't know what's going to happen when you get it. No, but he knew he was going to appeal, and he knew if he succeeded in his Speedy You appeal in every criminal trial, right? And you would think, then, if you were considering an appeal, that you would somehow limit the stipulation. It's how you write the stipulation. And I would think just the opposite. I would think if I stipulate for purposes of this trial, I would not necessarily bother. Exactly. That's why you put in for the purposes of this trial in the stipulation. You better remember that and tell the rest of your office and public defenders and U.S. attorneys that you better be very clear. Well, I mean, tell, right, I don't know, because it would seem to me that it would be sort of implicit that you would be, that they would expire at the first trial, and that's why you get the benefit of a second trial. And a somewhat, just, I understand we may have a slight difference of agreement here. The somewhat bizarre thing about this whole set of circumstances is that the stipulations for the first trial actually differed somewhat in their language . There were a few stipulations that did say in this case. Those can be found on pages 468 and 470 of the appellant's excerpts of record. Those aren't the stipulations that he actually tried to get out of for the second trial. Those stipulations, which can be found at 503 and 505 of the appellant's excerpts and as well in our, in our excerpts, don't have that limitation. All right. So to the extent that he said he had a limitation, it wasn't even in the stipulations that he's trying now to get out of. Thank you, counsel. Anything further? Oh, no. Thank you. Thank you. Mr. Paik, you have some reserved time. Let me, let me address the speedy trial issue first. In addition to the fact that Judge Jenkins did not in any way discuss the 137 days in his holdings, as Judge Wardlaw pointed out, counsel below specifically asked, specifically asked Judge Jenkins to make a finding as to the 137 days. And now I'm at page 399 to 400 of the excerpt of record. A counsel asked for a specific finding as to the other grounds that were, we raised in our brief to the Ninth Circuit and the ones they did not reach. The Court responded, well, the Ninth Circuit made its decision. That's the record. I'm not looking behind that. I'm kind of skipping around in the interest of brevity. Well, I guess I should ask you at least so I would have a record. I declined to do so. Okay? Okay. That was a specific request by Mr. Lewis, a specific request that the Court make a finding as to the 137 days. The Court specifically declined, quote, to do so. You can cobble together anything you want in the transcript to try to justify some kind of finding, but the problem here is there was nothing to appeal. Mr. Lewis isn't in a position to attach some portion of his prior Lewis I brief to this brief because there's no record to appeal. We don't know why the district court found that to be nonexcludable time. We don't even know, frankly, that it did find that it was nonexcludable time because the Court made absolutely no findings whatsoever. What the Court said was this case came back to me in a renamed posture. I am looking only to Lewis I, and I'm going to assess whether or not, based on what Lewis I held, there's a problem here and that whether this case needs to be indicted with or without prejudice. So you're asking us to remand to him again to assess the total time? Yes. To reassess the 137 days? Yes. And perhaps to give me discovery if he believes that it's necessary, and to allow me to, not me, but allow Mr. Lewis to attack the exclusions, and if necessary, if it goes that far, and if he doesn't dismiss with prejudice, then perhaps if there's a trial and Mr. Lewis is convicted again, appeal that ruling again. So on the theory that the district court misconstrued the scope of the remand on Lewis I, that's your theory? Not that he actually made an incorrect decision on the 137? Yes. Well, the Court misconstrued Taylor and the law related to with or without prejudice because the Court, instead of looking at the whole period of delay and trying to assess what the entire period of nonexcludable time was as Clymer instructs, the Court limited its consideration to Lewis I and what Lewis I said. And so that Mr. Lewis was denied the opportunity and will be denied in essence. I mean, there will never be, if the Court affirms, there will never be an assessment of the 137 days. One thing I wanted to point out about the problems with that 137 days and why the government's – I could suggest some nefarious motives, which I'm just suggesting them because I never got the – we never – Mr. Lewis never got the discovery. One is that the government, because this was a multi-defendant trial, Mr. Wong was the main defendant, he was the main target, the worst actor in this case, did not want to burn its witnesses, did not want to burn its discovery by having separate trials. Another nefarious motive would be that it was in negotiations with Mr. Wong to not only get his suppliers but also lower down people, and in order to foster these negotiations, allow them to go to the end, they delayed the trial. And Mr. Lewis's speedy trial rights, as a result, were violated. The government had cited the investigation. Mr. Counsel, do you agree with Mr. Agard's recital that counsel withdrew after the 254 days? I'm not sure about the 254 days. Well, when did counsel withdraw? The counsel that had to go to Europe. I believe it was in – I'm just testing my memory – July of 2000. Well, what's significant is, did he withdraw at the end of the 117 or at the end of the 254? He did not withdraw at the end of the – he did not withdraw at the end of the 137. He did not withdraw – well, okay, he did withdraw at the end of the 117 in the sense that – I think what happened was, between January 9th and May – some date in May 2000, there was that non-excludable period of delay. As a result of that delay, we got closer to the July date on which counsel had to leave to go to The Hague. So in that sense, it caused it, because if that delay hadn't existed, his – it wouldn't have implicated his – But he didn't withdraw until after the 2 years and 4 months. Is that correct? The 2 years? Yes. He withdrew after the 117 and the 137. All right. That's what I was asking. Thank you. Okay. But I guess on the prejudice question – well, okay. Let me – I wanted to deal with the stipulations. You mentioned the – I mean, nobody's mentioned the sentencing based on the value of the illegal contraband. Oh, right. All right. The upshot is that the law is that due process requires where a sentencing factor is estimated or ascertained, and it's difficult to ascertain or uncertain, the defendant could be given the benefit of the doubt where there's this close margin of error, which in this case was about 1 percent. The government doesn't argue that Mr. Lewis was given the benefit of the doubt. What the government said was that the value of these reptiles was established with certainty. The problem here is that the Court adopted inconsistent and conflicting methodologies to figure out what the value was. And as we pointed out in our brief, in one instance when they were – when he was trying to evaluate the Braze monitors, he said, well, you don't have any price lists. You only have this kind of anecdotal hearsay evidence about what the price is. I don't believe that's good enough. Yet in that same methodology, the no-price list, anecdotal testimony of hearsay of unidentified persons was enough to establish with certainty the price for the spider tortoises. Did your side offer a specific value for any of these species? I think it was more that we attacked what the government had put forth and that the argument, the upshot was that if you adopt a couple of our arguments here, you're going to be under $70,000. You're not going to go much – you're not going to go to the next lower level down, but you're certainly going to be under $70,000. That was the point. If I could address the stipulations, or if it's not necessary. Go ahead. Why don't you do it? I'm sorry. Go ahead. Oh, okay. I wanted to mention that the cases that the government cite are retrials of the same case. In this case, there was a new indictment. This indictment, the charging document, was dismissed. There was a new indictment with a new case number that had to – originally it was assigned to a different judge, Judge Ilston, and the government filed a notice of related case. They wouldn't have had to do that if it was the same case. This was a different case. These cases where there's the same indictment or it's on the same complaint in a civil case, whether it's on the same complaint or in the criminal cases where it's on the same indictment, they're the same case. We're not dealing with the same case here. We're dealing with a different case. The case caption is different in all these cases. We understand that, counsel. But you heard Mr. Agard's argument. What's your response to the fact that the stipulations at issue here did not include the limitation for this case only? I think that that's self-evident from the case caption itself. I think it's a question of the expectation of the – I think a stipulation is like a contract. And that when you stipulate to something, it's what the party's expectations are about that stipulation. The expectation, because this was a case that – the prior case, the expectation was that this stipulation is for Lewis I, that the case caption, this case, not that it's going to continue ad nauseum into every case, because I think it would be every single collateral case. It could be used in an immigration proceeding if Mr. Lewis were not a legal citizen. It could be – so. Thank you. Oh, sorry. The new indictment was a different case against Mr. Lewis. The government conceded that by filing a related case notice. They would not have – under the local rules, it would have gone to the same judge if it was a remand of the same case. Were the same parties named? No. Same defendants? No. Different defendants? There were – in the original case, there were – one, two, three. There were six defendants. There were 55 counts, I believe. It was – the conspiracies were different periods of time. The conspiracies alleged different periods of time. It was different in more ways than just the case caption. It was really a different case. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn. Thank you.
judges: O'scannlain,hawkins,wardlaw